UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL MUTHEE MUNYWE,

                Petitioner,

     v.

ROB JACKSON,

              Respondent.

CASE NO.  3:23-cv-05965-TSZ-BAT

**REPORT AND RECOMMENDATION**

Petitioner, Michael Muthee Munywe, seeks 28 U.S.C. § 2254 federal habeas relief from his conviction and sentence for Rape in the Second Degree and Unlawful Imprisonment in Pierce County Superior Court No. 18-1-04633-1. *See* Habeas Petition, Dkt. 6, and State Court Record, Dkt. 16, exhibit 1. On February 23, 2024, Respondent filed a Response and relevant portions of the state court record, arguing Petitioner's two habeas grounds for relief should be dismissed as unexhausted and lacking in merit. Petitioner filed a Reply to the Response on March 19, 2024. Dkt. 17. The matter was noted for March 22, 2024, as ready for the Court's consideration. Dkts. 15, 16.

Having considered the parties' pleadings and the record, the Court recommends **DENYING** the § 2254 petition and **DISMISSING** it with prejudice. No evidentiary hearing is necessary to resolve this case. If this recommendation is adopted, the Court recommends

REPORT AND RECOMMENDATION - 1

issuance of a certificate of appealability be denied.

## BACKGROUND

### A.    Habeas Petition

Plaintiff seeks § 2254 habeas relief from his conviction and sentence for Rape in the Second Degree and Unlawful Imprisonment in Pierce County Superior Court No. 18-1-04633-1. *See* Dkt. 6. Petitioner's habeas petition raises two grounds for relief.

In ground one, Petitioner contends he was "denied a fair trial by an impartial jury as guaranteed by the Sixth Amendment to the United States Constitution when State Courts failed to excuse an unfit juror." *Id.* at 6. In support, Petitioner alleges the trial judge "refused" to "excuse unfit juror 8 despite clear evidence of inattention and unfitness"; that juror 8 had been ill before trial started, the trial judge did not consider this and the juror "coughed continuously during trial sessions and especially during testimony." *Id.* Plaintiff contends the trial judge noticed juror 8 "hacking and drying her eyes" and "she couldn't possibly be paying attention to all of the evidence." *Id.*

Petitioner contends the juror coughed so much the trial judge stopped proceedings at one point to offer her a glass of water and later discussed the juror with the prosecutor and defense counsel. *Id.* at 7. The prosecutor indicated the juror had "an issue" and if there were concerns that she missed something the Court should question the juror. The Defense "acknowledged the trial judge had the better opportunity to observe" the juror. *Id.*

The trial judge questioned juror 8 and Petitioner contends the judge "failed to establish whether juror 8 had missed testimony and evidence since the beginning of trial." *Id at 7.* Petitioner contends the only responses the trial judge elicited from the juror was that she was "fine" and "still listening." *Id.* at 8.

In ground two, Petitioner contends he "was denied a fair trial and was unfairly prejudiced in violation of the Sixth Amendment when Trial Court commented on the evidence during trial" by using the initials of the victim in the to-convict jury instruction. *Id.* at 11. Petitioner contends the use of initials implied to the jury the "complainant was already a victim who needed protection" even though the complainant's name was used by the court and state during the trial. *Id.*

Petitioner's § 2254 habeas petition also avers Petitioner has two pending state post-conviction actions. *Id.* at 5 ("Both 1st and 2nd petitions have not yet been decided and are still pending in Superior Court and Court of Appeals."). Petitioner avers he filed in the Pierce County Superior Court, a Washington Criminal Rule 7.8 motion requesting the Court resentence him because his judgment and sentence are facially invalid. *Id. at 3.* Petitioner avers he also filed a second personal restraint petition (PRP) in the Washington Court of Appeals in which he alleges a) Petitioner is actually innocent; b) there was insufficient evidence to support a conviction for unlawful imprisonment; c) Petitioner's right to a speedy trial under Washington Criminal Rule 3.3 was violated; d) Petitioners was denied a fair trial in violation of the 4th, 5th, 6th and 14th Amendments and the rule in *Miranda;* e) Petitioner was denied effective assistance of trial counsel; and f) Prosecutorial misconduct. *Id.* at 4.

Because Petitioner stated he has two pending state actions for collateral relief, the Court directed Respondent to file a response as to whether the § 2254 petition should be stayed. Dkt. 7. Respondent indicated he would agree to stay proceedings until the conclusion of Petitioner's pending state criminal motion and PRP so long at the Court would grant Respondent 45 days from the time any stay was lifted to file an answer. Dkt. 9. Petitioner objected to any stay of his habeas petition and moved the Court to sanction Respondent for agreeing to a stay. Dkt. 11.

REPORT AND RECOMMENDATION - 3

1    The Court denied Petitioner's motion for sanctions and requested Petitioner to advise the

2    Court whether he wished to proceed solely on the two grounds for relief that he presented in his

3    § 2254 petition knowing that a second or successive § 2254 habeas petition that seeks to raise

4    other grounds for relief might be barred. Dkt. 12.

5        On January 8, 2024, Petitioner filed a notice that states "Comes now, Plaintiff Mr.

6    Munywe, who advices the court that he wishes to proceed on the two grounds for relief presented

7    in his habeas corpus petition." Dkt. 13. The Court accordingly directed Respondent to file a

8    response limited to addressing the two grounds for relief raised in the present § 2254 habeas

9    petition. The matter is now ripe for the Court's review.

10   **B.    State Court Proceedings**

11       The Washington Court of Appeals summarized the facts of Petitioner's crimes of

12   conviction and the relevant trial proceedings in an unpublished opinion on direct appeal:

13           On November 21, 2018, it was dark when 15-year-old AG got off a
             bus in downtown Tacoma. As AG started to walk home, Munywe
14           called out to her. AG initially thought Munywe was one of her
             mother's friends, but when she turned around, she realized she was
15           mistaken. Munywe kept talking to AG as she turned around and
             continued walking home. Munywe walked beside AG and
16           continued to talk to her. AG walked past the route to her house
             because she did not want Munywe to know where she lived.

17
             Munywe then began to hold AG's wrist. AG tried to pull away
18           more than once, but she could not. The two crossed the street and
             walked up a hill. Munywe was still holding AG's wrist and he led
19           her up the hill, walking in front of her. Munywe led AG to an
             alleyway where he sat down on a ledge and pulled AG down to her
20           knees close to him. Munywe took out his penis and forced it into
             AG's mouth. AG eventually pushed Munywe off her, got up, and
21           began to walk away. AG attempted to call her mother, but she did
             not answer. As AG continued to walk, Munywe grabbed her by the
22           wrist again. AG then dialed 911 and pretended like she was
             speaking with her mother so Munywe would not know she was
23           calling 911. She told the operator to pick her up at the McDonald's.

REPORT AND RECOMMENDATION - 4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Munywe eventually let go of AG and the two walked to McDonald's. As Munywe and AG walked toward McDonald's, Tacoma Police officer Jeffrey Thiry saw and detained Munywe, later arresting him. Thiry took Munywe to police headquarters, where detective William Muse interviewed him. The State charged Munywe with first degree rape and first degree kidnapping.

. . .

At trial, Munywe had a Swahili interpreter. AG, Thiry, and Muse testified to the facts presented above. At a recess, the trial court mentioned the health of juror 8. The court noted that the juror was coughing and drying her eyes. The court was concerned that the juror could not be paying attention to all of the evidence because she was distracted by her condition. Defense counsel stated that "it did seem to me that she was always focused on the evidence that was coming out." He asked the court to inquire before dismissing the juror. The prosecutor stated, "I have seen her, and I have noticed the coughing. It does look like she's paying attention, but she does have that issue." At the end of the day, the trial court questioned juror 8. Juror 8 stated that despite her coughing episodes, she was still able to listen to the evidence. She also stated that she had been sick, but was getting better. The court did not dismiss juror 8. The court gave to-convict instructions for the charged offenses and the lesser included offenses of second and third degree rape and unlawful imprisonment with sexual motivation. Each instruction used AG's initials rather than her full name. The prosecutor stated that initials were used in public documents for rape victims. The jury convicted Munywe of second degree rape and unlawful imprisonment with sexual motivation.

*See* Dkt.16, exhibit 2, unpublished opinion of Court of Appeals.

After the jury found Petitioner guilty of Rape in the Degree and Unlawful Imprisonment, the trial court sentenced Petitioner on March 27, 2020. *See* Dkt. 16 exhibit 1. Petitioner appealed to the Washington Court of Appeals. In the opening brief filed by his appellate counsel, Petitioner contended: (1) The trial court erred when it held rape and unlawful imprisonment were not the same criminal conduct for purposes of sentencing; (2)  "The Trial court's use of the complainants initials in the to-convict instructions was an improper judicial comment on the evidence under [the Washington State Constitution] article IV, section 16"; (3) "The trial Court

REPORT AND RECOMMENDATION - 5

abused its discretion in failing to excuse an inattentive juror"; and (4) The trial court erred in imposing a discretionary legal financial obligation despite finding Mr. Munywe indigent." *Id.* exhibit 3 at 35. *Id.* The opening brief's "Table of Authorities" cites only the Washington State Constitution, article I, § 21 and article IV § 16. *Id.* at 38. Petitioner's reply brief similarly cited to the Washington Constitution in support of the two arguments above. *Id.* exhibit 5. Petitioner's counsel did not cite to the United States Constitution in the table of authorities.

The Washington Court of Appeals rejected Petitioner's contention the trial judge erroneously failed to dismiss an unfit juror. The Washington Court of Appeals noted that under state law, the trial judge has a duty to dismiss an unfit law. *Id.* exhibit 2 at 27. The Washington Court of Appeals held:

> the trial court raised the issue of juror 8's coughing, stating a concern that she might have missed some evidence. But neither Munywe nor the prosecutor shared that concern. And the court questioned juror 8, who said that she had been able to listen to the evidence despite her coughing. Therefore, the court had no reason to dismiss juror 8.

*Id.*

The Washington Court of Appeals also rejected Petitioner's contention that the use of the victim's initials was an improper comment on the evidence in violation of Washington State Constitution, article IV, section 16. *Id.* at 27. The Washington Court of Appeals stated:

> Division One of this court rejected this comment on the evidence argument in *State v. Mansour*, 14 Wn. App. 2d 323, 329-33, 470 P.3d 543 (2020), review denied 196 Wn.2d 104 (2021). Munywe urges us to reject the holding in Mansour, but we agree with Division One's reasoning. Therefore, we reject Munywe's argument regarding the use of AG's initials.

*Id.* at 28-29. After the Washington Court of Appeals affirmed Petitioner's conviction and sentence, Petitioner by counsel filed a Petition for Review in the Washington Supreme Court.

1   Dkt. 16, exhibit 6. The Petition for Review argued: (1) The Court of Appeals contravened its

2   own published precedent when it held the rape and unlawful imprisonment convictions were not

3   the same criminal conduct for sentencing purposes; (2) "The trial court's use of the

4   complainant's initials in the to-convict instructions violated the constitutional prohibition of

5   judicial comments on the evidence"; (3) "The Court of Appeals contravened this Court's

6   precedent in refusing to remand for the trial court to strike the obligation to pay the supervision

7   fee"; and (4) "Mr. Munywe asks this Court to review the issues he raised in his statement of

8   additional facts [his speedy trial rights were violated and counsel was ineffective, *see* 178. ]." *Id.*

9   at 150. In support of the petition for review, the table of authorities cites to Washington State

10  Constitution art. IV, § 16. *Id.* at 152. The Petition for Review also cited to the United States

11  Constitution but only in support of the claim Petitioner's Sixth Amendment right to a speedy

12  trial, and his Fifth Amendment right to remain silent were violated. Dkt. 16, exhibit 6 at 174.

13       On June 8, 2022, the Washington Supreme Court denied review. *Id.,* exhibit 7 at 197. The

14  Washington Court of Appeals issued a mandate on June 14, 2022. *Id.,* exhibit 8 at 199. On

15  September 1, 2022, Petitioner filed a petition for writ of certiorari. Dkt. 16, exhibit 17. The

16  United States Supreme Court denied certiorari on November 14, 2022. *See Munywe v.*

17  *Washington*, 143 S. Ct. 431 (2022).

18       Before the United States Supreme Court denied certiorari, Petitioner filed a *pro se* motion

19  to "Recall the Mandate" and permission to "Refile Discretionary Review" in July 2022.  Dkt. 16,

20  exhibit 9. In this motion, Petitioner contended his lawyer did not seek review of the claim raised

21  on direct review that a juror was unfit and should have been excused, citing to Revised Code of

22  Washington (RCW), 2.26.110. *Id.* at 204.

23

On July 13, 2022, the Washington Court of Appeals denied Petitioner's motion to recall the mandate on the grounds it failed to satisfy Rule of Appellate Procedure (RAP) 12.9(b) which requires inadvertent mistake or fraud, and because a motion to withdraw the mandate should not be used to re-examine the merits of an appeal. Dkt. 16, exhibit 10 at 208.

On September 22, 2022, Petitioner filed a "Petition for Discretionary Review" requesting the Washington Supreme Court review the Washington Court of Appeals denial of the motion to recall the mandate. *Id.,* exhibit 11 at 213. Among other things, Petitioner argued review should be granted because his appellate lawyer failed to seek review of the Court of Appeals decision despite Petitioner's desire to assert his Sixth Amendment rights had been violated by the trial judge's failure to excuse an unfit juror. *Id.*

On November 11, 2022, a Commissioner of the Washington Supreme Court issued an order denying Petitioner's motion to review the denial of his motion to recall the mandate. *Id.* exhibit 14. The Commissioner noted Petitioner's appellate lawyer did not include the unfit juror issue in the petition for review, and Petitioner did not include this issue in his Statement of Additional Grounds (SAG). The Commissioner denied review finding there is no evidence of inadvertent mistake committed by the Washington Court of Appeals and Petitioner's displeasure with his lawyer's presentation of the petition for review is not grounds to recall the mandate. The Washington Supreme Court Commissioner further noted it is well settled a motion to recall the mandate is not a proper means to arguing anew the merits of Petitioner's appeal.

On November 16, 2022, Petitioner filed a motion to modify the Commissioner's decision. Dkt. 16, exhibit 15. The motion was denied by the Washington Supreme Court on February 23, 2023. *Id.* exhibit 16.

REPORT AND RECOMMENDATION - 8

As noted above, Petitioner has two pending state collateral challenges raising claims not contained in the present § 2254 habeas petition. *See* Dkt. 16, exhibit 20 (Brief filed in support of PRP filed on May 19, 2023, contending Petitioner's double jeopardy rights were violated and also asking the Court consider Petitioner's SAG arguments (exhibit 18) as to speedy trial, sufficiency of evidence, admission of incriminating statements, effectiveness of counsel and prosecutorial misconduct)

## DISCUSSION

### A.    Habeas Review Standards

This Court may grant habeas relief only if the state court decision: "(1) was contrary to clearly established federal law as determined by the Supreme Court, (2) involved an unreasonable application of such law, or (3) . . . was based on an unreasonable determination of the facts in light of the record before the state court." *See Fairbank v. Ayers*, 650 F.3d 1243, 1251 (9th Cir. 2011) (as amended); 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is contrary to clearly established federal law if it contradicts the law set forth by the United States Supreme Court or reaches a result different than that reached by the Supreme Court on materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). A state court's decision is an unreasonable application of clearly established federal law when the state court identifies the correct legal rule but applies it to a new set of facts in a way that is objectively unreasonable. *See id.* at 407. "Clearly established federal law means the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Xiong v. Felker*, 681 F.3d 1067, 1073 (9th Cir. 2012) (citation omitted). A court's determination of clearly established law rests on a Supreme Court holding, not on circuit decisions. *See Wright v. Van Patten*, 552 U.S. 120, 125–26 (2008) (A Supreme

Court case must have "squarely address[ed]" a certain issue and given a "clear answer" regarding the applicable legal rule to create "clearly established federal law.").

As to habeas relief based upon a claim the state court unreasonably determined the facts, "a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Miller–El I*, 537 U.S. 322, 340 (2010) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).").

Additionally, state-court factual findings are presumed correct. This is a presumption the petitioner must overcome by clear and convincing evidence. *Davis v. Ayala*, 135 S. Ct. 2187, 2199–2200 (2015) (quotation and citation omitted). Consequently, even if reasonable minds reviewing the record might disagree about a state court's factual determination, a federal habeas court cannot supersede the trial court's determination." *Id.* at 2201.

In considering a habeas petition, a federal court reviews the "last reasoned decision" from the state court. Where the final state court decision contains no reasoning, the court looks to the last decision from the state court that provides a reasoned explanation of the issue. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000). Where no state court decision articulates its underlying reasoning, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. . .." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). When the state courts fail to provide reasoning for its decisions, a federal court must independently review the record and ascertain whether the state court's decision was objectively unreasonable." *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (citation and

1    internal quotation marks omitted).” “Crucially, this is not a de novo review of the constitutional

2    question. Rather, even a strong case for relief does not mean the state court's contrary conclusion

3    was unreasonable.” *Id.* (citations and internal quotation marks omitted).

4          Finally, a federal court's review of a habeas claim is limited to the facts before the state

5    court and the petitioner is not automatically entitled to an evidentiary hearing in federal court.

6    *See Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). “An evidentiary hearing may be appropriate

7    after *Pinholster* only if the district court first determines that the state court made an

8    unreasonable application of federal law or made an unreasonable determination of facts based on

9    the record before it.” *Grecu v. Evans*, No. 07-0780-EMC, 2014 WL 5395783, at *17 (N.D. Cal.

10   Oct. 22, 2014) (unreported).

11        **B.**    **Exhaustion Requirement**

12         Petitioner may obtain federal habeas relief only if he has exhausted state judicial

13   remedies. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). The exhaustion requirement is a

14   prerequisite to the granting of a petition for writ of habeas corpus. 28 U.S.C. § 2254(b)(1)(A).[1]

15   *See Rose v. Lundy*, 455 U.S. 509 (1982). The exhaustion doctrine is based on a policy of federal

16   and state comity that is designed to give state courts the initial opportunity to correct alleged

17   constitutional deprivations. *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

18         The exhaustion doctrine requires a petitioner to do two separate things. First, to exhaust a

19   federal habeas claim, a petitioner must properly raise the federal claim in each appropriate state

20   court, including the state intermediate court of appeals and the state's highest court. *Baldwin v.*

21   *Reese,* 541 U.S. 27, 29 (2004).

22

23        [1] This section states that “An application for a writ of habeas corpus on behalf of a person in custody to the judgement of a State court shall not be granted unless it appears that —(A) the applicant has exhausted the remedies available in the courts of the State.”

And second, the exhaustion doctrine requires a petitioner to have fully and fairly presented each federal habeas claim to the highest state court. *Picard v. Connor*, 404 U.S. at 275. A petitioner that raises a state law claim which is merely similar to a federal claim fails to meet the fair presentation requirement. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (State claim based on state evidence rule admitting inflammatory and irrelevant testimony did not alert state court that petitioner was denied due process in violation of the Fourteenth Amendment). Additionally, it is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made. *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (Argument that jury instructions contravened holding in state case insufficient to show state court was apprised of federal constitutional violation).

Further a petitioner's mere mention of the federal Constitution as a whole, without specifying an applicable provision, or an underlying federal legal theory, does not suffice to exhaust the federal claim. *See Castillo v. McFadden*, 399 F.3d 993, 1002 (9th Cir. 2005) (holding that exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory). Thus, a federal claim is not fairly presented where the petitioner mentions a broad constitutional concept, such as due process. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999) (holding that "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion."). "When a petitioner does not label his claim as federal, the mere citation to a state court case that engages in both a state and federal constitutional analysis does not suffice to exhaust the federal claim." *Field v. Waddington*, 401 F.3d 1018, 1023 (9th Cir. 2005) citing *Casey v. Moore*, 386 F.3d 896, 912 n. 13 (9th Cir. 2004) ("For a federal issue to be presented by the citation of a state decision dealing with both state and

federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues.").

In the Ninth Circuit, a federal court should examine what the petitioner asserted in the state court and the context in which the assertion was made. The petitioner must explicitly alert the state court that he or she is making a federal constitutional claim. *Galvan v. Alaska Dept. of Corrections,* 397 F3d 1198, 1205 (9th Cir. 2005) ("If a party wants a state court to decide whether she was deprived of a federal constitutional right, she has to say so. It has to be clear from the petition filed at each level in the state court system that the petitioner is claiming the violation of the federal constitution that the petitioner subsequently claims in the federal habeas petition."). In short, unless a petitioner presented his or her federal habeas claims fully and fairly to the highest state court, the federal court is without jurisdiction to consider federal habeas claims for lack of exhaustion. *See* 28 U.S.C. § 2254(b)(1).

C.      **Petitioner failed to Exhaust by Failing to Present His Federal Claims**

The state court record shows Petitioner failed to properly exhaust the two federal claims set forth in the present habeas petition. To properly exhaust these federal claims, Petitioner was required to fully and fairly present them to the highest state court. In his direct appeal, Petitioner argued the use of the complainant's initials in the to-convict instructions violated Washington State Constitution article IV, section 16" and that the trial judge's failure to excuse an inattentive juror violated RCW 2.36.110, CrR 6.5, and Washington State Constitution art. I § 21. *See* Dkt. 16, exhibit 3.

In his Petition for Review of the Court of Appeals decision on direct review, Petitioner again argued the use of the complainant's initials in the to-convict instructions violated his rights citing again solely to Washington State law. Dkt. 16, exhibit 6 at 174. Petitioner did not seek

1  review in the Washington Supreme Court of the Washington Court of Appeals' determination

2  that the trial judge did not commit error in failing to excuse juror no. 8.

3        The record thus shows Petitioner presented the claims upon which he now seeks review

4  in this court solely upon state law grounds, and that he also failed to properly seek Washington

5  Supreme Court review of the juror claim in seeking review of the Court of Appeals decision. The

6  Court concludes because Petitioner failed to fully and fairly present the federal issues that are

7  now before this Court, he has failed to properly exhaust his federal claims in the state courts.

8        Petitioner disagrees and argues in his reply that he properly exhausted the juror claim

9  because he asked his lawyer to seek review in the Washington Supreme Court of the Court of

10  Appeals' denial of the claim, but his lawyer failed to do so, and because he also asked the

11  Washington Supreme Court to consider the claim, after it had initially denied review. Dkt. 17 at

12  3-4. These arguments acknowledge Petitioner did not present a federal juror claim to the

13  Washington Supreme Court. The fact Petitioner claims he asked his lawyer to present the claim

14  does not alter the fact, the claim was not presented to the Washington Supreme Court.

15        After the Washington Supreme denied review, Petitioner attempted to reraise the unfit

16  juror claim by filing a motion to recall the mandate affirming his convictions. The Washington

17  Courts denied the motion because a motion to recall the mandate cannot be used to raise

18  arguments that were not presented earlier. To the extent Petitioner attempted to present his

19  federal juror claim to the state courts in a manner that the state courts viewed as procedurally

20  impermissible, he failed to properly present the claim.

21        The Court notes that after Petitioner was denied review, denied recall of the mandate, and

22  the mandate finalizing his conviction was confirmed, he initiated two actions for collateral relief

23  in the state courts but did not raise the federal unfit juror claim upon which he now seeks relief.

REPORT AND RECOMMENDATION - 14

1    Hence Petitioner's assertion he "diligently" has sought review of the juror claim lacks support.

2    Dkt. 17 at 4-5.

3      Petitioner also argues he exhausted the "comment on the evidence" claim contending

4    "just because Mr. Munywe claimed there was violation of state constitution, did not necessarily

5    mean that there was no mention of the federal constitutional issue." Dkt. 17 at 7.  Petitioner

6    claims he cited "several federal laws that prevented use of pseudonyms" "which violated the

7    Sixth Amendment." *Id.*  In support, Petitioner attached a copy of *Doe v. Rose*, 2016 WL 9150620

8    (C.D. Cal., Aug. 24, 2020) to his reply. Dkt. 17. The *Doe* case was included in Petitioner's

9    motion for Washington Supreme Court review for the proposition that the use of a pseudonym

10   may convey a message to the jury that the trial judge thinks there is merit to a plaintiff's claim

11   and the impact of this "subliminal suggestion" may likely be "strong enough that a limiting

12   instruction would not eliminate prejudice."  Dkt. 16, Exhibit 6 at 168.

13     The decision in *Rose,* a civil tort case, addressed a motion to preclude the use of

14   Plaintiff's use of a pseudonym at trial entirely. This case does not rest upon the Sixth

15   Amendment as Petitioner claims. Rather it appears the Court applied a balancing test in which it

16   weighed the need to protect a party from harassment, injury, embarrassment against any possible

17   prejudice to the opposing party and the general rule parties be named in an open judicial

18   proceeding. *Doe v. Rose*, at *3 citing among other cases *Doe v. Penzato*, 2011 WL 1833007

19   (N.D. Cal. May 13, 2011) (Courts balance the need to protect a party from harassment, injury,

20   embarrassment with potential prejudice to the opposing party and the requirements of Federal

21   Rule of Civil Procedure 10(a), which mandates that all names of the parties be included in a

22   complaint and the public's and the parties' common law right to know the identity of the parties

23   in a judicial proceeding.).

REPORT AND RECOMMENDATION - 15

1    The Court accordingly finds Petitioner did not present a federal comment on the evidence

2    claim to the state courts and this claim is thus unexhausted.

3    When a petitioner fails to exhaust his or her federal habeas claims and the state court to

4    which petitioner must present the habeas claims to satisfy the exhaustion requirement would now

5    procedurally bar the claims, the claims are procedurally defaulted, and federal habeas relief is

6    unavailable. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (Court may "not review a question

7    of federal law decided by a state court if the decision of that court rests on a state law ground that

8    is independent of the federal question and adequate to support the judgment

9    Petitioner's direct appeal and personal restraint petition were both denied by the state

10   courts. If the Court finds petitioner failed to exhaust the two claims presented in his habeas

11   petition, Petitioner would be required to return to the state courts and fully and fairly present

12   them to the state courts before this Court could consider them on habeas review.

13   However, Washington law contains two statutory procedural bars Petitioner's ability to

14   return to state court and obtain collateral relief from a criminal conviction and sentence. First a

15   petition for collateral attack on a judgment and sentence in a criminal case must be filed within

16   one year after the judgment becomes final. *See* RCW 10.73.090(1) ("No petition or motion for

17   collateral attack on a judgment and sentence in a criminal case may be filed more than one year

18   after the judgment becomes final if the judgment and sentence is valid on its face and was

19   rendered by a court of competent jurisdiction."); *See also In re Haghighi*, 178 Wn.2d 435, 445-

20   46 (2013) (Haghighi timely filed a PRP but the amended PRP was filed more than one year after

21   his appeal became final and the claims therein are therefore time barred).

22   Collateral attack in Washington includes the filing of a Personal Restraint Petition

23   ("PRP"). RCW 10.73.090 is a mandatory rule that acts as a bar to appellate court consideration

REPORT AND RECOMMENDATION - 16

1    of PRPs filed after the limitation period has passed, unless the petitioner demonstrates the PRP is

2    based on one of the exemptions enumerated in RCW 10.73.100. *See In Re Bonds*, 165 Wn2d.

3    135, 140 (2008). The time limitations set forth in RCW 10.73.090 have been deemed an

4    independent and adequate state ground to bar federal habeas review. *See Shumway v. Payne*, 223

5    F.3d 982, 989 (9th Cir. 2000) ("Shumway has failed to demonstrate that Wash. Rev. Code §

6    10.73.090 is not an adequate and independent state procedural rule that bars her claims."). Under

7    Washington law "a judgment becomes final, among other things, when 'an appellate court issues

8    its mandate disposing of a timely direct appeal from the conviction.' RCW 10.73.090(3)(b)."

9    *Matter of Sandoval*, 189 Wn.2d 811, 820 (2018).

10          Here, the United States Supreme Court denied certiorari on November 14, 2022.

11    Respondent contends judgment in this case thus became final on that date. While this would

12    normally be the case, this is not a normal case because Petitioner's motion to recall the mandate

13    and request for further state review was pending until February 23, 2023. Ostensibly, the

14    Washington Supreme Court could have granted Petitioner's motion to recall the mandate and

15    provide further collateral review and this possibility indicates judgment was not final until

16    February 23, 2023, for purposes of calculating the finality of petitioner's state judgment.

17          However, even if judgment were final on February 23, 2023, Respondent is correct that

18    more than one year has passed since then and Petitioner is thus time-barred under Washington

19    law which requires a petitioner to seek collateral relief within one year after judgment becomes

20    final. *See* RCW 10.73.090 (No petition or motion for collateral attack on a judgment and

21    sentence in a criminal case may be filed more than one year after the judgment becomes final.").

22    RCW 10.73.100 provides exceptions to the one-year time bar but those exceptions (newly

23    discovered evidence, unconstitutional statute, double jeopardy, insufficient evidence, sentence

exceeded jurisdiction, and change in law) are inapplicable to Petitioner's claims that one of the jurors was unfit and the use of the victim's initials in the to-conviction instruction was prejudicial.

The Ninth Circuit has previously determined that RCW 10.73.090 is an independent and adequate state ground to bar habeas review. *See Shumway v. Payne*, 223 F.3d 982, 989 (9th Cir. 2000); *Casey v. Moore*, 386 F.3d 896, 920 (9th Cir. 2004). The Court accordingly concludes that Petitioner failed to fully and fairly present to the highest state court the two federal claims upon which he seeks now habeas relief. His federal claims are thus unexhausted. Because Petitioner is time-barred from returning to state court to exhaust his two federal claims, they are procedurally defaulted and must consequently be dismissed.

### D.    Merits of Petitioner's Grounds for Relief

Respondent contends the habeas petition should be dismissed not only because the two federal habeas claims are unexhausted and procedurally defaulted, but also because Petitioner fails to show the state courts' determination are contrary to or an unreasonable determination of clearly established federal law as established by the Supreme Court or based upon an unreasonable determination of the facts. Dkt. 15 at 13.

#### a.    *Failure to Excuse Juror No. 8*

Regarding the claim the trial judge violated Petitioner's rights by failing to excuse juror no. 8, the transcript of proceedings shows that during direct examination of a state witness, the trial judge asked juror 8 "are you okay" and directed she be given water. Dkt. 16, exhibit 21 at 499. The trial judge asked the juror "are you ready to proceed" and the juror stated "Yes. Thank you." *Id.*

The trial judge later stated to counsel:

REPORT AND RECOMMENDATION - 18

> I'm concerned about juror no. 8. She has been hacking and drying her eyes and frankly bumming out her neighbors on the jury. As much for the health of the jury and myself, I guess, was well as everybody else, I'm really concerned that she might be broadcasting her germs throughout the courtroom. What I'm thinking of telling her that if she doesn't feel considerably better by tomorrow that we're going to excuse her.

*Id.* at 522.

In response, defense counsel stated "Your honor, I don't have any specific problem with that general plan of attack. I think we should question her about how she is feeling or whether she has something contagious. It might just be an allergy or something like that." *Id.* at 522-23.

The trial judge indicated "my concern is that she couldn't possibly be paying attention to all of the evidence. She's been distracted by her whatever it is illness, allergy, pick one. *Id.* at 522. In response, defense counsel stated:

> I don't think I've been watching her as much as the Court. You have a slightly better view than I do, but I can see her directly. But mostly I'm focusing on the witness, and you're looking right over the top of the witness and her, so she is more in your vision. When I look over, I have seen her tearing up and coughing and dabbing her eyes with a Kleenex, not from emotion, but from some kind of something. But it did seem to me that she was always focused on the evidence that was coming out. I think if she is still obviously sick and the Court were to inquire tomorrow, I think that would be one of the questions, whether she has missed any evidence. If she has, then I think that's an easy answer, but I think we would have to inquire on that before dismissing her or I would ask the court to.

*Id.* at 522-523.

The trial court also asked for input from the prosecutor who stated:

> Your Honor, I have seen her, and I have noticed the coughing. It does look like she's paying attention, but she does have that issue. If the Court is concerned that she has missed something, I think we have to inquire of her, and if she has, then excuse her. If she hasn't been, I leave that to the Court's discretion at that point.
>
> If the Court is concerned that she has missed something, then I believe we owe a duty to inquire to make sure that hasn't

> happened. If it has happened, that is an issue that we need to
> address at that point.

*Id*. at 523.

The trial judge subsequently questioned juror no. 8, outside the presence of the other jurors. The trial judge asked how the juror was feeling and she stated "I feel just fine. It's just that I have to cough and I'm sorry." *Id*. at 535-26. The trial judge asked: "Do you feel like when you have these coughing episodes that you are still able to pay attention to the evidence?"  The juror responded: "Yes I am still listening." *Id*. at 526. The juror indicated she had been ill "when we first came here" The trial judge stated: "if you are okay that's great but if you feel like you have taken a turn for the worse or something . . .." to which the juror stated: "No. Actually I'm getting better." *Id*.  The juror then asked: "Am I disrupting too much?"; in response the trial judge stated "No, you're not. Incredibly enough, I'm concerned about you and I am trying to be solicitous of your welfare. If you are able to maintain and still be attentive to the trial that's okay with me." *Id.* at 526-27.

Petitioner argues the failure to dismiss juror no. 8 violated his rights under Sixth and Fourteenth Amendments because the trial judge "refused" to dismiss an "unfit" juror. A defendant in a state criminal case has a right to a fair and impartial jury. *See e.g.  United States v. Sarkisian,* 197 F.3d 966, 981 (9th Cir. 1999) *(citing Irvin v. Dowd,* 366 U.S. 717, 722, (1961)). Petitioner fails to show the state court's decision is contrary to, or an unreasonable application of, clearly established federal law. Petitioners argues juror no. 8 was unfit because she coughed a lot, and that the trial judge failed to determine whether she had missed some of the trial testimony. The argument fails to point to any evidence that this was indeed the case. The record shows that while the trial judge was concerned about the health of juror no. 8 and whether she was able to be attentive to the testimony, the trial judge resolved those concerns by questioning

the juror. The record shows counsel and the trial judge discussed that if the juror indicates she missed some of the testimony or could not be attentive that she would be dismissed. Neither defense counsel or the prosecutor expressed any concern that juror 8 had missed some of the testimony or was unable to be attentive to the testimony based upon the juror's testimony. Rather the prosecutor stated "I have noticed the coughing. It does look like she's paying attention." Neither counsel requested the trial judge dismiss juror no. 8 and thus Petitioner's claim the trial judge "refused" to dismiss the juror is unfounded.

Petitioner is correct the trial judge did not specifically ask juror no. 8 the specific question of whether she had missed any past testimony. However, juror no. 8 never indicated that she had missed any testimony; stated at the beginning of the questioning by the trial judge that she felt "fine"; and the only concern she expressed was whether her coughing was "bothering" anyone.  When the trial judge asked the juror "[d]o you feel like when you have these coughing episodes that you are still able to pay attention to the evidence," the juror replied "yes, I'm still listening."  It is reasonable to construe the juror's answer to mean that despite coughing, she was able to pay attention to the evidence and thus did not miss any evidence.

The record thus does not support Petitioner's claim that juror no. 8 was "unfit" and that the state court's rejection of his claim is clearly contrary to, or an unreasonable application of law clearly established by the United States Supreme Court. The record also does not support Petitioner's claim the trial judge "refused" to excuse the juror, as neither counsel ever requested that the juror be excused.

Further, the record does not support a claim the state court's determination was based upon an unreasonable determination of the facts. As noted above, even if reasonable minds reviewing the record might disagree about a state court's factual determination, a federal habeas

court cannot supersede the state court's factual determinations. Here the trial judge took

comment from counsel and questioned juror no. 8 and determined juror no. 8 need not be

excused. Whatever disagreement one may have over the trial judge's and the appellate court's

determinations, one cannot conclude the state courts' determinations are objectively

unreasonable.

The Court according recommends denying and dismissing the claim that the trial judge's

failure to excuse juror no. 8 violated Petitioner's federal rights.

### b. *Comment on the Evidence*

Plaintiff claims the "[t]rial Court commented on the evidence during trial when the Court

used initials in the to-convict instructions and explaining to the jury that they use initials to

protect rape victims." Dkt. 6 at 11. Respondent argues the Court should deny this claim because

the United States Supreme Court has not held judicial comment on the evidence violates the

United States Constitution. Dkt. 15 at 20.

Respondent's argument flows from cases such as *Gentry v. Sinclair*, 576 F.Supp.2d 1130

(W.D. Washington 2008), a capital habeas case. In *Gentry* the Court addressed a federal habeas

corpus claim that the state trial judge unconstitutionally violated petitioner's rights by admitting

evidence of petitioner's prior convictions that included a judgment and sentence that was signed

by the trial judge *Id.* at 1159. The habeas petitioner claimed this evidence improperly signaled to

the jury that petitioner posed a danger to others in the future and this comment on the evidence

prejudiced him at the penalty phase of this trial. *Id.* The Court rejected this habeas claim stating:

> It is clear, however, that the law of the United States permits the
> judge to comment to the jury on the evidence in the case. *Quercia
> v. United States*, 289 U.S. 466, 469, 53 S.Ct. 698, 77 L.Ed. 1321
> (1933); *see United States v. Sanchez–Lopez*, 879 F.2d 541, 553
> (9th Cir.1989) (citing *Quercia*, 289 U.S. at 469, 53 S.Ct. 698 (a
> judge may comment upon the evidence and may express an

opinion on the facts as long as the judge makes it clear to the jury
that all matters of fact are submitted for their determination)).

*Id.* at 1160.

While the Supreme Court in *Quercia,* stated a trial judge may comment on the facts at

trial, the Court also stated the judges' ability to do so "has its inherent limitations." *Quercia v.*

*United States*, 289 U.S. at 470. In *Quercia*, the Supreme Court found the trial judges comment to

the jury the defendant's "wiping one's hands while testifying was 'almost always an indication

of lying' was an erroneous repudiation that everything the defendant said was a lie." *Id.* at 472.

Here, applying the standard of review under § 2254(d), the Court cannot say the

Washington state court's rejection of Petitioner's claim the use of the victim's initials is contrary

to Supreme Court law or based upon an unreasonable determination the facts. The trial judge in

*Quercia* impermissibly told the jury defendant's testimony was not truthful. Here the trial

judge's "to convict" instruction used the initials "A.G." versus the AG's full name. There is no

clearly established Supreme Court law that the use of initials in a case such as this is a per se

federal constitutional violation. The record also does not show this instruction directed the jury

to find that state's allegations were true or suggested to the jury that they must find Petitioner

guilty. The Court according recommends dismissing this claim.

## EVIDENTIARY HEARING

This matter may be resolved without an evidentiary hearing. As discussed above, the

Court finds for all claims examined on the merits, the state courts' adjudication was neither

contrary to or an unreasonable application of clearly established Supreme Court law nor based

upon an unreasonable determination of the facts given the record. Given these circumstances, the

Court is barred from conducting an evidentiary hearing to further develop the facts on

petitioner's claims. *Cullen v. Pinholster*, 563 U.S. 170, 185 ("If a claim has been adjudicated on

the merits by a state court, a federal habeas petitioner must overcome the limitations of §

2254(d)(1) on the record that was before the state court.")[2]; s*ee also Sully v. Ayers*, 725 F.3d

1057, 1075 (9th Cir. 2013) ("Although the Supreme Court has declined to decide whether a

district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d)

has been satisfied . . . an evidentiary hearing is pointless once the district court has determined

that § 2254(d) precludes habeas relief.") (internal quotation marks and citation omitted).

In sum, to determine if relief is available under 28 U.S.C. § 2254(d)(1) or (2), the Court's

review is limited to the record before the state court. *Pinholster*, 563 U.S. at 185; *Gulbrandson*,

738 F.3d at 993 n.6 (9th Cir. 2013) A hearing should not be held if the allegations would not

entitle petitioner to relief under 28 U.S.C. § 2254(d). *Schriro v. Landrigan,* 550 U.S.465, 474

(2007). "It follows that if the record refutes the applicant's factual allegations or otherwise

precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* at 464–

65.

Here, the Court concludes petitioner is not entitled to relief and the habeas claims may be

resolved by review of the existing record without further discovery or supplementation of

evidence presented for the first time; accordingly, no evidentiary hearing is required because

petitioner's allegations do not entitle him to habeas relief. Petitioner's request for evidentiary

hearing and any discovery should therefore be denied. *See also Kemp v. Ryan*, 638 F.3d 1245,

1269 (9th Cir. 2011) (when a habeas petitioner is not entitled to an evidentiary hearing, then the

---

[2] The *Pinholster* limitation also applies to claims brought under § 2254(d)(2). *See Gulbrandson v. Ryan*, 738 F.3d 976, 993 n. 6 (9th Cir. 2013) ("*Pinholster* and the statutory text make clear that this evidentiary limitation is applicable to § 2254(d)(2) claims as well. *See* § 2254(d)(2) (allowing for habeas relief if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.") (emphasis added); *Pinholster*, 563 U.S. at 185 n. 7 (comparing (d)(1) to (d)(2) and stating that (d)(1) "also is plainly limited to the state-court record.").

petitioner's request for discovery is futile, and the court does not abuse its discretion in denying it.).

## CERTIFICATE OF APPEALABILITY

A prisoner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of the petition only after obtaining a certificate of appealability ("COA") from a district or circuit judge. A COA may be issued only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court finds Petitioner is not entitled to a COA with respect to any of the claims asserted in his petition. Petitioner should address whether a COA should issue in his written objections, if any, to this Report and Recommendation.

## OBJECTIONS AND APPEAL

This Report and Recommendation is not an appealable order.  Therefore, Petitioner should not file a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit until the assigned District Judge enters a judgment in the case.

Objections, however, may be filed and served upon all parties no later than **April 9, 2024.**  The Clerk shall note the matter for **April 12, 2024**, as ready for the District Judge's consideration if no objection is filed.  If objections are filed, any response is due within 14 days after being served with the objections.  A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served.  The matter will

then be ready for the Court's consideration on the date the response is due.  Objections and responses shall not exceed 15 pages.  The failure to timely object may affect the right to appeal.

DATED this 25th day of March, 2024.

_____

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 26